IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEIDI LEIGH VAN ARMBURGH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, ) <br> ACTING COMMISSIONER OF ) <br> SOCIAL SECURITY, ) <br> ) <br> Defendant. ) | Civil Action No. 12-96J |

## MEMORANDUM AND ORDER OF COURT

AND NOW, this 30th day of September, 2013, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 14) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Importantly, where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff protectively filed her pending application[1] for SSI on October 20, 2008, alleging a disability onset date of November 7, 1979, subsequently amended to October 20, 2008, due to a heart problem, illiteracy and depression. Plaintiff's application was denied initially. At plaintiff's request an ALJ held a hearing on May 21, 2010, at which plaintiff, represented by counsel, appeared and testified. On August 27, 2010, the ALJ issued a decision finding that plaintiff is not disabled. On March 12, 2012, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 30 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §416.963(c). Plaintiff has an eleventh grade education, which is defined as limited. 20 C.F.R. §416.964(b)(3). She has no past relevant work experience and has not engaged in any substantial gainful activity since her alleged onset date.

After reviewing plaintiff's medical records and hearing plaintiff's testimony, and upon consideration of a vocational expert's responses to interrogatories, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of a history of ventricular septal defect, major depressive disorder, dysthymic disorder, and adjustment disorder with mixed features, social anxiety disorder, claustrophobia, and borderline intellectual functioning, those impairments, alone or in combination, do not meet or medically equal the criteria of any of the impairments listed at Appendix 1 of 20 C.F.R., Part 404, Subpart P.

The ALJ also found that plaintiff retains the residual functional capacity to perform light

---

[1] Plaintiff had filed a prior application for SSI on March 24, 2008, with an alleged onset date of June 12, 2002, which was denied at the initial level. Plaintiff did not seek further administrative review of that denial.

work with a number of restrictions accounting for the limiting effects of her impairments.[2] (R. 16-17). A vocational expert identified numerous categories of jobs which plaintiff can perform based upon her age, education, work experience and residual functional capacity, including garment sorter, fruit cutter, nut sorter and folder. Relying on the vocational expert's testimony, the ALJ found that there are jobs which exist in significant numbers in the national economy that plaintiff can perform. Accordingly, the ALJ determined that plaintiff is not disabled.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[3] for determining whether a claimant is under a disability. 20 C.F.R. §416.920;

---

[2] Specifically, the ALJ found that plaintiff has the residual functional capacity to perform light work except she is limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple work-related decisions and, in general, relatively few work place changes. In addition, plaintiff is limited to no more than occasional interaction with coworker, supervisors and the general public and is limited to occupations that require no reading for content or comprehension, no mathematical calculations, such as cashier or teller work, and no more than 1-2 step job tasks. Finally, the ALJ recognized that plaintiff has a marked limitation in her ability to understand, remember and carry out detailed instructions. (R. 16-17).

[3] The ALJ must determine in sequence: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and, (5) if so, whether the claimant can perform any other work which exists in the national economy in light of her age, education, work experience and residual functional capacity. 20 C.F.R. §416.920. In addition, when there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow the procedure for evaluating mental impairments set forth in the regulations. Plummer, 186 F.2d at 432; 20 C.F.R. §416.920a.

Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). If the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff raises two challenges to the ALJ's finding of not disabled: (1) the ALJ erred at step 3 by finding that plaintiff does not have an impairment that meets Listing 12.05; and, (2) the ALJ erred at step 5 because his residual functional capacity finding and hypothetical to the vocational expert failed to account for plaintiff's inability to manage verbal instructions. Upon review, the court is satisfied that the ALJ properly evaluated the evidence and that all of the ALJ's findings are supported by substantial evidence.

Plaintiff's first argument is that the ALJ erred at step 3 by finding that plaintiff's severe impairment of borderline intellectual functioning does not meet or equal Listing 12.05, the listing for mental retardation. At step 3, the ALJ must determine whether the claimant's impairment matches, or is equivalent to, one of the listed impairments. Burnett v. Commissioner of Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §416.920(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." Burnett, 220 F.3d at 119.

The burden is on the ALJ to identify the relevant listed impairment in the federal regulations that compares with the claimant's impairment. Id. at 120 n.2. The ALJ must "fully develop the record and explain his findings at step 3, including an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id.

At issue in this case is whether the ALJ's finding that plaintiff does not meet or equal Listing 12.05(C) is supported by substantial evidence.[4] That Listing provides as follows:

> 12.05. Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function ...

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05.

Plaintiff argues that she meets the C criteria of this Listing by virtue of a verbal IQ score of 69 attained during a psychological evaluation by Tammy Haslett, Ph.D., in December of 2004 combined with her other severe impairments,[5] and that the ALJ erred in requiring her to establish anything more. However, because it is clear that the ALJ did not accept the verbal IQ score of 69 because it was inconsistent with the other evidence of record as explained in his decision, and this determination is supported by substantial evidence, plaintiff does not meet Listing 12.05(C).

---

[4] Plaintiff does not challenge the ALJ's findings that she does not meet or equal any of the Listings for impairments to the cardiovascular system set forth at §4.00, *et seq.*, of Appendix 2 or that she does not meet Listings 12.04 or 12.06 for affective disorders or anxiety related disorders, respectively. Nor does she argue that she meets the (A), (B) or (D) criteria of Listing 12.05. Accordingly, this court's analysis focuses solely on whether there is substantial evidence to support the ALJ's finding that plaintiff does not meet Listing 12.05(C).

[5] The second prong of 12.05(C) requiring a "physical or other mental impairment" is satisfied by a finding that plaintiff has another "severe" impairment within the meaning of step 2 of the sequential evaluation process. See Markle, 324 F.3d at 186; 20 C.F.R. §416.920(c); 65 Fed. Reg. 50746, 50772 (August 21, 2000). Here, there is no dispute that plaintiff's severe impairments of a history of ventricular septal defect, major depressive disorder, dysthymic disorder, and adjustment disorder with mixed features, social anxiety disorder and claustrophobia qualify as "physical or other mental impairment(s)" within the meaning of Listing 12.05(C).

As an initial matter, pursuant to the Regulations and case law in this circuit, and contrary to plaintiff's argument, in order to meet Listing 12.05, a claimant must meet <u>both</u> the introductory criteria to that listing, requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested [before age 22]," <u>and</u> the criteria of one of paragraphs A through D. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A; <u>Gist v. Barnhart</u>, 67 Fed. Appx. 78, 81 (3d Cir. 2003)("[a]s is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning' with an initial onset prior to age 22."); <u>Cortes v. Commissioner of Social Security</u>, 255 Fed. Appx. 646, 651 (3d Cir. 2007) (to meet the listing for mental retardation, the claimant must prove, *inter alia*, "subaverage general intellectual functioning with deficits in adaptive functioning" manifesting before age 22); <u>Grunden v. Astrue</u>, 2011 WL 4565502 (W.D. Pa., Sept. 29, 2011); <u>Lansdowne v. Astrue</u>, 2012 WL 4069363 (W.D.Pa., September 17, 2012).

Here, it is apparent that the ALJ found that plaintiff does not meet Listing 12.05 because she failed to show <u>either</u> significantly subaverage general intellectual functioning with deficits in adaptive functioning prior to age 22, as required under the introductory paragraph, (R. 15-16), <u>or</u> a <u>valid</u> verbal, performance or full scale IQ of 60 through 70 as required under paragraph (C). (R. 16). In making this determination, the ALJ discussed the relevant medical and other evidence supporting his conclusion and adequately explained how he arrived at his finding. (<u>Id</u>.)

The ALJ began his analysis by acknowledging the IQ testing administered by Dr. Haslett in December of 2004 which resulted in a full scale IQ score of 80, a verbal IQ score of 69 and a performance IQ score of 99. Although plaintiff's verbal IQ score of 69 falls at the top end of the

AO 72
(Rev. 8/82)

60-70 range required by Listing 12.05(C),[6] the regulations require <u>valid</u> scores, and it is well-settled that an ALJ is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record. Markle, 324 F.3d at 186.

In determining whether an IQ score is valid, *i.e.*, an accurate reflection of a claimant's intellectual abilities, the ALJ is to consider the entire record before him. Markle, 324 F.3d at 186. "[T]est results may be deemed invalid where the IQ scores are inconsistent with the claimant's prior educational or work history, daily activities, behavior or other aspects of his or her life." Manigault v. Astrue, 2009 WL 1181253 (W.D. Pa. 2009)(J. Standish).

Here, it is clear that the ALJ considered the record as a whole and adequately explained why he did not accept the verbal IQ score of 69 as a valid indicator of plaintiff's actual intellectual abilities. (R. 16). Of particular significance, the ALJ focused on the report of Dr. Haslett herself, who did not opine that the verbal IQ score of 69 was valid. Instead, although reporting a "confidence interval" that plaintiff's verbal IQ is between 65-75, she further noted the "large discrepancies" between the verbal and performance scales and concluded that there is a "95% chance that [plaintiff's] true IQ falls in the range 76-84." (R. 218). Significantly, while recognizing that plaintiff displayed extremely low intellectual functioning on the verbal scale, Dr. Haslett did not diagnose plaintiff with mild mental retardation[7] and concluded that plaintiff's

---

[6] Under the Regulations, where verbal, performance and full scale IQ's are provided, the lowest of the scores is used for purposes of Listing 12.05, and only one score within the 60 through 70 range is necessary. See §12.00D.6.c; Burns v. Barnhart, 312 F.3d 113, 125, n. 6 (3d Cir. 2002).

[7] Plaintiff alleges that the ALJ erred in concluding that a diagnosis of mental retardation is required to meet Listing 12.05. The ALJ made no such conclusion. Instead, in analyzing the validity of plaintiff's verbal IQ score of 69, the ALJ considered the fact that Dr. Haslett had not diagnosed plaintiff with mental retardation. In addition, nowhere in the decision did the ALJ suggest, as plaintiff now contends, that an IQ test taken before the claimant attains age 22 is required to satisfy Listing 12.05; rather, he simply noted that the record does not include any IQ results other than those from Dr. Haslett in 2004. (R. 16).

prognosis is "good." (R. 16). See Manigault, 2009 WL 1181253 at *9 (psychologist who diagnosed claimant with borderline intellectual functioning rather then mild mental retardation [8], despite IQ scores in the 61-70 range, implicitly found scores to be invalid.).

The ALJ further noted that plaintiff's verbal IQ score of 69 was inconsistent with other evidence in the record, including the fact that plaintiff was "functioning well" during the relevant time period as well as records from Dr. Pote's consultative examination in June of 2008 and the December 2008 report of plaintiff's therapist. (R. 16). Moreover, in September of 2009, Dr. Cassone, a treating psychiatrist, attributed plaintiff's reading and writing difficulties to a learning disability rather than mental retardation. (R. 278).

It is clear from the record that the ALJ considered the record as a whole in declining to accept plaintiff's 2004 verbal IQ score of 69, and the court is satisfied that this determination is supported by substantial evidence as outlined by the ALJ in his decision. Accordingly, as Listing 12.05(C) requires a *valid* IQ score in the 60 through 70 range, the ALJ did not err in finding that plaintiff does not meet that listing.[9] The court is satisfied that the ALJ's step 3 finding is supported by substantial evidence.

---

[8] Under the DSM-IV, standardized test scores between 71 and 84 are indicative of borderline intellectual functioning, while scores between 60 and 70 are indicative of mild mental retardation. Manigault, 2009 WL 1181253 at *9, n. 15.

[9] In regard to the ALJ's finding that plaintiff does not meet the introductory criteria to Listing 12.05 because "there is no evidence of deficits in adaptive functioning that were manifested prior to age 22," although the ALJ did a thorough job setting forth the evidence supporting this finding, his assessment technically did not comply with the SSA's directive in Technical Revisions to Medical Criteria for Determinations of Disability, 67 FR 20018-01 (April 24, 2002), by identifying and applying one of the four standards of measurement used by one of the professional organizations in making his determination. See Lansdowne v. Astrue, 2012 WL 4069363 (W.D.Pa., September 17, 2012); Grunden v. Astrue, 2011 WL 4565502 (W.D. Pa., Sept. 29, 2011); Logan v. Astrue, 2008 WL 4279820 at *8 (W.D. Pa. Sept. 16, 2008)(D.J. Fischer). However, remand is not necessary on this ground because plaintiff nevertheless does not meet the C criteria of Listing 12.05 as explained above.

Plaintiff's second argument relates to the ALJ's finding of not disabled at step 5 of the sequential evaluation process. Specifically, plaintiff alleges that although the ALJ's residual functional capacity finding recognizes plaintiff's significant limitations in handling written instructions, it does not account for plaintiff's marginal ability to handle verbal instructions. The court finds this argument to be without merit.

At step 5, the ALJ must show that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. §416.920(f). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by her impairments. 20 C.F.R. §416.945(a); Fargnoli, 247 F.3d at 40.

Here, the ALJ found that plaintiff retains the residual functional capacity to perform light work with numerous restrictions accounting for plaintiff's mental impairments, including, *inter alia*, that she is "limited to occupations that require no reading for content or comprehension, no mathematical calculations, such as cashier or teller work, and no more than 1-2 step job tasks." The ALJ also recognized in his residual functional capacity finding that plaintiff has "marked limitation in her ability to understand, remember and carry out detailed instructions." (R. 16-17) The court believes that this limitation fully accounts for plaintiff's difficulty in managing any instructions, whether written or verbal.

It is clear from the record that the ALJ adequately considered all of the relevant medical evidence, as well as plaintiff's reported activities, in assessing plaintiff's residual functional capacity, and that he incorporated into his finding all of the limitations that reasonably could be supported by the medical and other relevant evidence. (R. 17-21). The ALJ's hypothetical to the vocational expert incorporated all of the foregoing restrictions and, in response, the vocational

expert testified that there are jobs existing in significant numbers in the national economy that plaintiff can perform with those restrictions. The court is satisfied that the ALJ's residual functional capacity finding and hypothetical to the vocational expert adequately account for all limitations supported by the evidence. <u>Podedworny v. Harris</u>, 745 F.2d 210 (3d Cir. 1984)(RFC and hypothetical to the vocational expert must reflect only those impairments and limitations supported by the record).

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

                                                                         Gustave Diamond
                                                                         United States District Judge

cc:    Karl E. Osterhout, Esq.
        Lindsay Fulton Osterhout, Esq.
        521 Cedar Way
        Suite 200
        Oakmont, PA 15139

        Stephanie L. Haines
        Assistant U.S. Attorney
        200 Penn Traffic Building
        319 Washington Street
        Johnstown, PA 15901